THOMAS P. LEONARD, *Appellee,* v. JOHN HARTZLER
et al., *Appellants.*

No. 18,844.

SYLLABUS BY THE COURT.

1. CORPORATION—*Insolvency—Receiver Appointed — Corporation Not Dissolved.* Insolvency of a corporation and the appointment of a receiver to manage its business and wind up its affairs do not work a dissolution of the corporation, nor will these things, of themselves, impair its capacity to sue or to enforce judgments previously obtained.

2. APPEAL—*Burden on Appellant to Show Prejudicial Error.* It devolves upon the appellant who alleges that a ruling is erroneous to show affirmatively from the record that prejudicial error was committed.

Appeal from Sherman district court. Opinion filed July 5, 1913. Affirmed.

*C. C. Perdieu,* and *John Hartzler,* both of Goodland, for the appellants.

*E. F. Murphy,* of Goodland, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by the appellee to recover from appellants real property in the vicinity of the city of Goodland. At one time B. F. Sparr owned an eighty-acre tract of land adjoining Goodland, and in 1889 he platted a part of it under the designation of West View Addition. Prior to that time Sparr and his wife had given a mortgage upon a part of the tract to the American Investment Company, which was subsequently foreclosed, and the appellee has acquired his title to it through the purchaser at the sale under the mortgage. In 1890 the Sparrs mortgaged the greater part of the tract to the Beatrice Savings Bank, and default being made upon that mortgage the bank brought an action in January, 1895, to foreclose the same. On November 18, 1895, a judgment

Leonard v. Hartzler.

of foreclosure was entered and a sale of the property ordered. Before the sale was made a proceeding was brought in the state of Nebraska against the Beatrice Savings Bank, in one of the courts of that state, in which it was found that the bank was insolvent and that a receiver for the bank should be appointed. Accordingly two receivers were at first appointed, who gave bond and took possession of the business and assets of the bank, being vested with authority to sell and dispose of its assets upon such terms as the court should direct. After the appointment of the receivers, and in March, 1897, a sale of the property was made under the judgment of foreclosure in favor of the bank by the sheriff to the bank itself, and shortly afterwards the sale was confirmed and the sheriff was directed to execute a deed to the bank. No further steps were taken as to the transfer of the mortgaged property until 1906, when the sheriff's deed was issued and the appellee acquired title to the property through the grantee in that conveyance. Appellee claimed title to this as well as some other property through tax deeds and other conveyances and proceedings. Appellants rest their claim of title to the property upon the quitclaim deed executed by Sparr and wife on January 29, 1907, for a consideration of $25. They took possession of the property in April, 1907, by placing a fence around it, after which they used it as a pasture until the time of the trial.

The principal contention in this appeal is that the judgment in favor of the Beatrice Savings Bank, under which most of the property was sold, was dormant at the time of the sale and the subsequent proceedings connected with it. If the life of the bank had been extinguished by dissolution when the order of sale was issued and the sale made to the bank there would be ground for appellants' contention. Nothing in the record, however, shows that the bank had been dissolved when the sale proceedings were had, nor does

it appear that dissolution has since taken place.   The only basis for the contention made by appellants is that the Nebraska court found the bank to be insolvent and that the appointment of a receiver was a necessity. Insolvency is not equivalent to dissolution.   It may be ground for adjudging the forfeiture of corporate rights, but neither insolvency nor the appointment of a receiver ends corporate existence.   It may turn out that the assets of the corporation will be sufficient to pay the corporate debts and justify the discharge of the receiver and the resumption of corporate business.   Even the lack of assets and the failure to transact business for a considerable time added to insolvency does not terminate corporate life.   So it was held in *Bank v. Sewing Society,* 28 Kan. 423, that:

"The statements in a petition that an incorporated bank has long since ceased to transact business, is insolvent, and has no property or assets of any description out of which the money alleged to be due can be collected by execution or other process of law, are not equivalent to an allegation that the corporation is dissolved."   (Syl. ¶ 1.)

(See, also, *The State, ex rel., v. Pipher,* 28 Kan. 127; *Plow Co. v. Rude,* 60 Kan. 145, 55 Pac. 848.)

In 10 Cyc. 1297, the same rule is stated in the following language:

"Neither the insolvency of a corporation nor the circumstances which usually attend an insolvency, such as the appointment of a receiver, work a dissolution of the corporation, so as to disable it from exercising its corporate powers and using its corporate name for the purpose of protecting the rights of those beneficially interested in its assets and business, since the possession of property is not essential to the existence of a corporation."

It does not appear that the court which appointed the receiver enjoined the bank from enforcing obligations due to it nor from carrying to a finality judicial proceedings in which the bank was interested or to which

it was a party. Since it was not shown that the charter of the bank had expired or that a decree of dissolution was entered, or that it had become dissolved in any of the modes known to the law, there is no reason why it could not enforce the judgment of foreclosure which it had obtained or legally purchase the property at the judicial sale. The sale to the bank was confirmed, establishing that all the steps were legal, and the fact that there was delay in the issuance of the deed by the sheriff did not impair the validity of the sale nor weaken the title taken by the purchaser. (*Bell v. Diesem,* 86 Kan. 364, 121 Pac. 335.)

A few lots and blocks involved in this action were not included in that mortgage and sale, but are covered by tax sales and other proceedings, and it is contended that the statute of limitations has run against appellee's title under the tax deeds. It is impossible to determine the status of these lots and blocks from the record before us. All of the testimony pertaining to the proceedings affecting them is not found in the abstract, nor yet in the transcript of the testimony which we have procured and examined. The transcript refers to the introduction of deeds and other instruments, stating that they were read to the court, but what they contained was not reproduced nor the purport of them transcribed. The trial court decided against the contention of appellants, and it must be presumed upon sufficient evidence. As the appellants are alleging error it devolved upon them to show affirmatively that the finding and rulings of the court on their contention were erroneous, and upon all the evidence preserved we are unable to say that there was error in the judgment of the court. In so far as a part of the lots are concerned it appears that in another foreclosure proceeding all the right and interest of the Sparrs was foreclosed and conveyed, and also that they were barred from claiming any interest or right in them. As to

these they had no title or interest to convey to appellants.

On the record it must be held that there was no error, and therefore the judgment of the district court will be affirmed.